

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

**PHILLIP JEROME MURPHY,**

**Petitioner,**

v.                                                     **CRIMINAL ACTION NO. 2:15-cr-103**

**UNITED STATES OF AMERICA,**

**Respondent.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner **PHILLIP JEROME MURPHY**'s ("Petitioner") Motion for

Compassionate Release.[1] ECF Nos. 89 and 103. For the reasons stated below, Petitioner's Motion

is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 19, 2015, Petitioner Phillip Jerome Murphy ("Petitioner") was named in a

multi-count indictment for criminal conduct associated with the unlawful distribution of Schedule

I narcotics. ECF No. 16. On September 22, 2015, Petitioner pleaded guilty to Counts 1 and 6 of

the superseding indictment. ECF No. 25. Count 1 charged Petitioner with conspiracy to

manufacture and distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(A)(i). *Id.* Count 6 charged Petitioner with possession of a firearm in furtherance of a

drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.*

From in or about 2012 through July 16, 2015, Petitioner was involved in a heroin

distribution conspiracy. *See Presentence Investigation Report*, ECF No. 91. This conspiracy

---

[1] Petitioner primarily seeks relief in the form of (1) compassionate release based upon the COVID-19 pandemic or (2) a sentence reduction based upon sentencing disparities between Petitioner's mandatory minimum sentence and that of similarly situated defendants after imposition of the First Step Act.

1

operated primarily in the cities of Franklin, Emporia, and Smithfield, Virginia; however, Petitioner regularly traveled to New York to obtain heroin from his source of supply. *Id.* at 4. Petitioner also employed at least five other individuals to help him distribute heroin. *Id.*

On several occasions, Petitioner sold various quantities of heroin to undercover police officers and confidential informants. *Id.* at 6-7. On July 16, 2015, a federal search warrant executed on Petitioner's residence recovered five scales, nine cell phones, narcotics packaging materials, and quantities of heroin, cocaine, and marijuana. *Id.* Additionally, two firearms and assorted ammunition were recovered. *Id.*

At the time of Petitioner's conviction, Counts 1 and 6 carried mandatory minimums of 240 months and 60 months respectively. Accordingly, on January 6, 2016, this Court sentenced Petitioner to a total of 300 months imprisonment, inclusive of the mandatory minimums for each count—240 months on Count 1 and 60 months on Count 6. ECF No. 36.

On October 2, 2020, Petitioner filed a *pro se* Motion for Compassionate Release based upon the ongoing COVID-19 pandemic. ECF No.89. The Court ordered appropriate responses on October 6, 2020. ECF No. 90. Petitioner's initial counsel filed a motion to withdraw on April 21, 2021, which the Court granted on April 22, 2021. ECF Nos. 99 and 100. Petitioner was provided new counsel who subsequently supplemented Petitioner's Motion on May 26, 2021. ECF No. 103. The Government responded in opposition on May 28, 2021. ECF No. 104. Petitioner did not file a reply. Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

Relevant to the issue of compassionate release, the text of 18 U.S.C. § 3582(c)(1)(A), as amended by the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"), provides:

2

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment [] after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> **(i)** extraordinary and compelling reasons warrant such a reduction; or
> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, [etc.].

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, pursuant to § 3582(c)(1)(A), a district court may reduce a sentence upon a petitioner's motion with the following findings: (1) the petitioner has achieved compliance with the 30 day exhaustion requirement, absent circumstances justifying its waiver; (2) the petitioner has made a demonstration satisfying the requirements of either § 3582 (c)(1)(A)(i) or § 3582 (c)(1)(A)(ii); (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (4) a reduction is supported by the application of the § 3553(a) factors.

## A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Courts may; however, waive the exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL

3

3039123, at \*3–\*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

**B. Compassionate Release and the Applicable Policy Statements**

Before passage of the FIRST STEP Act, the Sentencing Commission issued a policy statement governing protocols for compassionate release. *See* U.S.S.G. §1B1.13. The Sentencing Commission provided that a sentence may be modified upon consideration of the petitioner's medical condition, age, or family circumstances. U.S.S.G. §1B1.13, n. 1 (A)–(C). Additionally, the Sentencing Commission further defined the limits under which a sentence reduction may be awarded. *Id.* The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Unfortunately, use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

Now, defendants may petition courts directly for a sentence modification, without seeking clearance from the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A). Moreover, U.S.S.G. §1B1.13 is now outdated following passage of the FIRST STEP Act and the Sentencing Commission has yet to issue any subsequent applicable policy statements. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *See McCoy v. United States*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Lisi*, 2020 WL 881994, at \*3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy

statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Therefore, the Court may consider a combination of factors, including—but not limited to—those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i). By statute, Congress specifically states that a petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### III. DISCUSSION

The Court must assess: (1) whether Petitioner has achieved compliance with the 30 day exhaustion requirement; (2) whether Petitioner claims an "extraordinary and compelling reason" for relief as required by § 3582 (c)(1)(A)(i); and (3) whether a reduction is supported by the application of the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A). The Court will examine each of these requirements in turn.

### A. The Exhaustion Requirements as Applied to Petitioner

Petitioner submitted a request for compassionate release based upon the ongoing COVID-19 pandemic on June 22, 2020. ECF No. 103-2. The warden of Petitioner's correctional facility denied his request on June 30, 2020. ECF No. 103-3. Accordingly, Petitioner satisfied the exhaustion requirements under § 3582(c)(1)(A).

### B. Petitioner's "Extraordinary and Compelling Reasons" for Relief

Petitioner outlines three "extraordinary and compelling reasons" for relief from his original sentence. ECF No. 103. First, Petitioner requests compassionate release based upon the ongoing

5

COVID-19 pandemic. Second, Petitioner requests a sentence reduction based upon the FIRST STEP Act's alterations to 21 USC §§ 802(57) and 841. Third, Petitioner relies upon his behavioral record and rehabilitative efforts throughout incarceration as conduct warranting release. As a preliminary matter, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Therefore, the Court will consider Petitioner's rehabilitation efforts in conjunction with his first and second reasons for relief.

### 1. Compassionate Release based upon the ongoing COVID-19 Pandemic

In evaluating whether an "extraordinary and compelling reason" for release has been established based upon the COVID-19 pandemic, the Court considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton).

Here, Petitioner is presently incarcerated at FCI Allenwood Low which houses approximately 886 inmates. *FCI ALLENWOOD LOW*, BOP, https://www.bop.gov/locations/institutions/alf/ (last visited Jul. 19, 2021). At this time, FCI Allenwood Low oversees 253 inmates who have recovered from COVID-19 but maintains no current COVID-19 diagnoses. *See COVID19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/ (last visited Jul. 19, 2021). As the BOP continues to distribute its allotment of COVID-19 vaccines, the Allenwood federal correctional complex (which includes FCI Allenwood Low) has fully vaccinated 1562 inmates, not including Petitioner. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited Jul. 19, 2021); ECF No. 28.

Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Here, Petitioner proffers his age, ethnicity, and asthma as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 103. As a preliminary matter, Petitioner's ethnicity is not a medical condition that can exacerbate a COVID-19 diagnosis.[2] The CDC does, however, indicate that having asthma "can make you more likely to get severely ill from COVID-19."[3] The CDC also states that older adults are "more likely to get severely ill from COVID-19"[4] Despite the aforementioned ailments, the Court is unable to conclude that Petitioner's circumstances related to COVID-19 present an extraordinary and compelling reason for release.

The Court has examined Petitioner's brief and medical records and notes that "in the years leading up to his incarceration [Petitioner] has shown only moderate symptoms" related to his asthma. ECF No. 103 at 9. Moreover, while Petitioner's medical records do indicate instances of shortness of breath, his most recent asthma-related medical examination showed no signs of respiratory distress and no prescription medications. ECF No. 107 at 10-13. Indeed, the record indicates that Petitioner's shortness of breath was "resolved on its own, with no intervention." *Id.* at 10. This indicates to the Court that Petitioner's asthma is sufficiently controlled. Additionally, the Court acknowledges that Petitioner is 47 years old; however, the CDC warns that the age-related risks associated with COVID-19 increase with individuals in their 50's and higher.[5]

---

[2] *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[3] *Id.*
[4] *Id.*
[5] *Older Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jul. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

Even if Petitioner's ailments showed a more significant risk of severe illness from contracting COVID-19, the Court would still be unlikely to find an extraordinary and compelling reason for release given Petitioner's refusal to obtain a vaccine. According to the BOP, Petitioner declined a COVID-19 vaccine on February 24, 2021. ECF No. 104-1. The Court cannot ignore that Petitioner's refusal to obtain a vaccine plays a key role in any increased risk of severe illness.

The CDC advises that upon vaccination, "[y]ou can resume activities that you did prior to the pandemic," and "[y]ou can resume activities without wearing a mask or staying 6 feet apart."[6] Moreover, "COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death." *Id.* With this information from the CDC and knowing that Petitioner is in an environment in which most of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration. While the world continues to grapple with the pandemic, many incarcerated persons suffer from a variety of ailments that may make them susceptible to severe illness from a COVID-19 diagnosis. As the Court continues to exercise its discretion in releasing the most vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis. Based upon the foregoing reasoning, the Court is unable to find an extraordinary and compelling reason for relief related to the ongoing COVID-19 pandemic.

**2. A Sentence Reduction based upon the FIRST STEP Act and 21 USC §§ 802(57) and 841**

Prior to Petitioner's conviction, the United States filed a 21 U.S.C. § 851 enhancement notice on September 22, 2015, notifying the Court that Petitioner had previously been convicted

---

[6] *When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention (Jul. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

of distribution and possession with intent to distribute marijuana in the Southampton Circuit Court (the "marijuana conviction"). ECF No. 23. Petitioner received a five-year sentence for the marijuana conviction; however, all five years were suspended. *Id.* At the time, pursuant to 21 U.S.C. § 841(b)(1)(A), the marijuana conviction qualified as a prior serious drug felony, warranting an increase in Petitioner's mandatory minimum under Count 1. *Id.* Accordingly, Petitioner's conviction on Count 1 required a 240-month term of imprisonment as opposed to 120 months. *Id.*

In considering a term of imprisonment, courts must comply with 18 U.S.C. § 3553(a), which enumerates several factors intended to create a sentence that is "sufficient but not greater than necessary." At the time of Petitioner's sentencing, the Court's ability to fashion a sufficient sentence was limited by the mandatory minimums in effect. In 2018, however, the FIRST STEP Act redefined a "serious drug felony" under 21 USC § 802(57). Now, in order to trigger an increased mandatory minimum based upon the offender having prior serious drug felonies, (1) the offender must have served a term of imprisonment of more than 12 months for said offense, and (2) the offender's release from any term of imprisonment must be within 15 years of commencement of the instant offense. *See* 21 U.S.C. §§ 802(57) and 841(b)(1)(A). Here, the Government proffered Petitioner's marijuana conviction as the underlying serious drug felony proscribed by § 841. Petitioner's period of incarceration, however, was suspended for the marijuana conviction, making his term of imprisonment less than the statutorily required period of more than 12 months. Accordingly, the marijuana conviction does not qualify as a serious drug felony under 21 U.S.C. §§ 802(57) and 841(b)(1)(A).

The Government argues that even though the marijuana conviction does not qualify, Petitioner had another prior drug conviction—possession of cocaine with intent to distribute—

which would have met the new restrictions imposed by the FIRST STEP Act. ECF No. 104 at 19. The Government admits, however, that it did not rely upon the cocaine conviction when it issued its § 851 enhancement notice. *Id.* Therefore, the Court declines to assess whether the Government would have met its burden under alternative circumstances. Instead, as it stands now, after passage of the FIRST STEP Act, if Petitioner were sentenced under the same offense conduct, Petitioner could have received 10 years fewer than the 20-year sentence previously imposed.

Accordingly, the disparity between Petitioner's sentence and that of offenders sentenced after the FIRST STEP Act is 2:1, meaning Petitioner's sentence under Count 1 is twice as long as that of similarly situated offenders. Under the 18 U.S.C. § 924(c) context, the United States Court of Appeals for Fourth Circuit held that disparate sentences may warrant an extraordinary and compelling reason for a sentence reduction. *See McCoy*, 981 F.3d at 286 ("In sum, we find that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act."). Similarly, the Court finds that the disparity between Petitioner's sentence on Count 1 and that of subsequent offenders supports a downward departure. The Court must now assess Petitioner's § 3553(a) factors to determine whether a sentence reduction is warranted.

## C. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)

At the time of Petitioner's original sentencing, application of the former mandatory minimums created a sentence that was far greater than necessary to fulfill the § 3553(a) factors. *See United States v. Brown,* 411 F. Supp. 3d 446, 453 (S.D. Iowa Oct. 8, 2019) (noting that prior to similar FIRST STEP Act revisions to "stacked" § 924(c) charges, sentences were "far greater than was necessary to achieve the ends of justice"). Upon review, a reduction in Petitioner's

sentence on Count 1 to a term of 120 months is consistent with the § 3553(a) factors, especially § 3553(a)(2)(A) ("the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and § 3553(a)(6) ("the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"); *see also United States v. Urkevich*, 2019 WL 6037391, at *2 (D. Neb. Nov. 14, 2019) (reducing three "stacked" firearm counts from 660 months to 180 months because the petitioner's former sentence was 40 years longer than the sentence he would have likely received under current law). Petitioner's involvement in a conspiracy to possess and distribute heroin is certainly reprehensible conduct warranting a term of imprisonment. Ten years, as opposed to 20 years, is sufficient time "to promote respect for the law" and "provide just punishment." 18 U.S.C. § 3553(a)(2)(A).

Additionally, after over five years of incarceration, Petitioner has taken part in several rehabilitation efforts. He completed drug education and treatment programs in addition to numerous inmate educational courses. ECF No. 103-9. Petitioner also maintains employment at his correctional facility and has already paid the $200 special assessment imposed upon him at sentencing. *Id*. Moreover, Petitioner has no incidents on his disciplinary history over the last six months. *Id*. at 1.

In sum, the Court finds that Petitioner has demonstrated extraordinary and compelling reasons that merit a sentence reduction on Count 1. The structural disparity between Petitioner's imposed mandatory minimum and that of post-FIRST STEP Act defendants, as well as an individualized application of the § 3553(a) factors, support a sentence reduction. While the foregoing factors may not independently support a reduction, in combination, Petitioner has established extraordinary and compelling reasons for a sentence reduction. Accordingly, the Court

will reduce Petitioner's sentence on Count 1 to a term of 120 months, to be served consecutively with his sentence of 60 months on Count 6. Therefore, Petitioner's total sentence is reduced to a cumulative term of 180 months. All other provisions of Petitioner's sentence shall remain the same.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Compassionate Release based upon risk of injury from COVID-19 is **DENIED**. Petitioner's motion for reduction of his sentence is **GRANTED**. The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
July 27 , 2021

Raymond A. Jackson
United States District Judge